**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Cheryl A. Oliver,**

        **Plaintiff,**

**v.**                                           **Case No. 3:03-cv-230
Judge Thomas M. Rose**

**City of Springboro, *et al.*,**

        **Defendants.**

---

**ENTRY AND ORDER GRANTING IN PART MOTION OF DEFENDANTS CITY OF SPRINGBORO, CHRISTINE THOMPSON AND ROBYN BROWN FOR SUMMARY JUDGMENT,** DOC. 19**, AND REMANDING CASE.**

---

Pending before the Court is Motion of Defendants City of Springboro, Christine Thompson and Robyn Brown for Summary Judgment. Doc. 19. The instant case involves allegations by Cheryl Oliver that she was unconstitutionally deprived of property rights without due process, in violation of 42 U.S.C. §§ 1983 and 1988, and various state law claims. Plaintiff is Cheryl A. Oliver, a former employee of Co-Defendant the City of Springboro. The other Co-defendants are Robyn Brown, Springboro's Director fo Finance, and Christine A. Thompson, the Springboro City Manager. Oliver decries the actions of Defendants in providing copies of the contents of her personnel folder to a potential employer, after she had authorized its release. According to Oliver, several documents in the personnel folder of her former employer should never have been put there. Because Plaintiff has asserted no property right that is protected by § 1983, judgment will be entered in favor of Defendants on Oliver's federal claims.

**I.	Factual Background**

Plaintiff, Cheryl A. Oliver, worked for the City of Springboro from June of 2000 until April 23, 2003.  Her immediate supervisor during her term of employment was Co-Defendant Robyn Brown, Director of Finance for Springboro.  Prior to this she had worked as a tax agent for the City of Riverside.  Thus, many of Oliver's duties in her position as Assistant Finance Director/Tax Administrator for Springboro were either new to her or different from the duties in her previous positions.  Oliver's initial six-month probationary period was extended based upon factors which Oliver asserts included her inability to receive the appropriate training for her position, and Springboro's inability to train her in a timely fashion.  Oliver claims that she needed to learn specific tasks from the people she supervised.  The individuals from whom she needed training, however, were unable to take the time from their daily work to show Oliver, their supervisor, the day-to-day operations of their jobs.

This situation continued until at least the beginning of April 2002, when Oliver came to the conclusion that, because of the stress of the job, she was going to look for another position.  Before resigning she attempted to discuss with her supervisor an amicable agreement to separate where she would have the ability to continue at Springboro while looking for another job.  A meeting was arranged for April 23, 2002.  Springboro had already decided that it wanted to discontinue Oliver's employment, and had prepared termination documents to be used in the event that Oliver chose not to resign at the April 23, 2002 meeting.

On April 23, 2002, Oliver, represented by counsel, agreed to a separation agreement pursuant to which Oliver resigned immediately.  In consideration for her resignation, she received two weeks's pay.  The agreement also provided that Oliver would tender her irrevocable resignation to

Springboro effective the end of the work day on Saturday, May 11, 2002. The city, for its part, made some concessions:

> 3. City agrees to provide the following severance benefits to Employee:
>
>    a. With her last paycheck covering the period through May 11, 2002, Employee shall be paid for all vacation time accrued but unused through May 11, 2002.
>
>    b. Employee shall have COBRA rights to continue her health insurance at her expense after May 31, 2002, as provided by law.
>
> 4. City agrees not to contest Employee's application for Ohio Unemployment Compensation, provided that she does not attempt to obtain compensation for any period prior to May 11, 2002.

Notable among Oliver's concessions was one that foreclosed litigation against Springboro for any actions Springboro took during her employment:

> 5. Employee hereby agrees not to protest, challenge, appeal, file suit or otherwise seek redress for or reversal of her separation from employment with the City of Springboro. She agrees not to assert any claim or cause of action in any way related to, or arising from, her employment with the City, or her separation from employment with the City, whether legal or equitable, known or unknown, under the common law, state law or federal law, which might be asserted against the City or against any of its employees, agents or public officials. Employee hereby confirms that she has not been discriminated against on account of his race, age, sex, disability, national origin or religion. *Employee understands and agrees that all claims which she might assert on any basis whatsoever are completely and finally precluded by this agreement.*[1]

---

[1] There is no evidence, however, that documents of which Oliver complains were in her personnel file at this point. Indeed, one might conclude that the unexecuted documents would not yet be there.

Doc. 27, Ex. 1, at 1-2 (Emphasis added).

In January of 2003, Oliver applied for a job with the City of Vandalia, Ohio. Oliver Depo. at 88. In her application, she stated that she had never been forced to resign from any previous employment and that she had left the City of Springboro because of "professional ethics." Doc. 27, at 90, and Ex. 1, at 15-16. Oliver depo. at p. 90; See copy of Application, attached as Exhibit J to the Cheryl Oliver deposition). Oliver also made disparaging remarks about the City of Springboro during her interviews with Vandalia, indicating that she had left her employment because of problems she perceived in the management at Springboro and issues with "professional ethics." Trick depo. at pp. 78-79. Oliver did not mention the City's dissatisfaction with her performance or the fact that she left under the threat of termination. Oliver depo. at pp. 90-93; Trick depo. at p.78.

After Oliver left Springboro, she did consulting work for the Village of Sebring. Her immediate supervisor at the Village of Sebring was Teddy Ryan, the Municipal Manager. Ryan had been Oliver's immediate supervisor at the City of Riverside from February 1998 to June 2000. On or about February 2003, Oliver received a conditional offer of employment from the City of Vandalia for the position of Tax Agent II. The offer was conditioned upon Oliver's successfully completing an employment physical and a background check. Oliver signed the offer letter dated February 21, 2003, and faxed it to Julie Trick , Administrative Services Director for Vandalia. Besides the letter, Oliver signed another document allowing for a background check:

> City of Vandalia
> <u>Consent for Release of Information</u>
>
> I freely grant consent for employers, schools, law enforcement agencies, other individuals and organizations to release any information to investigators, personnel staffing specialists, and other authorized employees of the company, including criminal conviction history or credit history information.

> I hereby release the above agency from any and all damages or claims for damages arising either directly or indirectly as a result of this service.

Doc. 27, Ex. 1, at 7.  On April 24, 2002, with this document in hand, Trick went to Oliver's former places of employment, requesting that they allow her to view the contents of Oliver's personnel file. Trick Dep. at 20-28.  Springboro consented to providing this service.

On February 25, 2003, Oliver learned that Vandalia's conditional offer had been withdrawn because of information Trick found unacceptable in Oliver's background.  When the offer from Vandalia was withdrawn, Oliver returned to the Village of Sebring to continue her consulting work. She told Ryan that she would not be accepting the position based upon information that Trick had found in her personnel file.  Because Ryan had given Trick a favorable reference for Oliver, he wanted to see what was in Oliver's personnel file that caused Vandalia to withdraw its offer.  Ryan made a request to review her file at Springboro, was provided a copy of the personnel file, and discussed the contents of the file with Oliver.  In Oliver's personnel file were copies of records sent to Ohio Department of Job and Family Services regarding Oliver's request for unemployment benefits.  There was also a copy of a four-page series of notes in sequence that are dated, beginning January 29, 2002 and ending April 12, 2002, but are not signed.  These notes were prepared by Brown on her computer and never shown to Oliver, nor was she ever aware that they were in her personnel file.  Also found in Oliver's personnel file, attached to an unsigned Separation Agreement, was a letter dated April 23, 2002, signed by Co-Defendant Christine Thompson, acting City Manager, terminating Oliver's employment, and a Notice of Formal Disciplinary Action terminating Oliver dated April 23, 2002.  Those documents, although prepared, were never given to Oliver and

were never used. Oliver, prior to Ryan's review of her personnel file, had no knowledge of their existence.

On May 22, 2003, Oliver filed a complaint against the City of Springboro, Robyn Brown and Christine A. Thompson. Doc. 1. On June 15, 2004, Oliver amended her complaint to add as defendants M. Marie Davis and the City of Riverside, who have since been dismissed from the action. Docs. 12, 30. Oliver's amended complaint charges that the action of the remaining defendants "which were in violation of "O.R.C. §§ 1347.08[2] and 1347.09 as well as contrary to the intent and spirit of the Settlement Agreement entered into on April 23, 2002, interfered with Oliver's ability to obtain employment with Vandalia and constitute a violation of Oliver's substantive and procedural due process rights in violation of 42 U.S.C. §§ 1983 and 1988, as protected by the Fourteenth Amendment to the United States Constitution"; claims two, three and four assert "tortious interference with Plaintiff's employment." Doc. 12.

Defendants have moved for summary judgment. Doc. 19. Oliver has countered with a motion for partial summary judgment of her own. Doc. 31.

## II. Summary Judgment Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

---

[2] Ohio Rev. Code § 1347.08 requires state and local agencies that maintain personnel files to allow inspection upon request. Ohio Rev. Code § 1347.09 allows for a person to request that inaccurate, irrelevant, untimely and incomplete information be removed from a personnel file.

P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250, 106 S. Ct. 2505 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 106 S. Ct. 1348 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324, 106 S. Ct. 2548.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255, 106 S. Ct. 2505. If the parties present conflicting evidence, a court may

not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, § 2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

**III.    Legal Analysis**

Oliver's federal claims arise under 42 U.S.C. § 1983 and 1988. Doc. 12. In order to state a claim for deprivation of property without due process of law under 42 U.S.C. § 1983, a plaintiff must establish that he or she was "deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of state law." *American Manuf. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

The Fourteenth Amendment provides that "no State shall…deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *American Manuf. Mut. Co.*, 526 U.S. at 59. In the instant case, Oliver asserts:

> The property interest…is twofold. One was the Separation Agreement negotiated between Plaintiff and Defendant Springboro. Two was the offer of employment with Vandalia which because of Defendants' actions was withdrawn.

Doc. 23, at 13.

Unfortunately for Oliver, in the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause. *Finley v. Giacobbe*, 79 F.3d 1285, 1297 (2nd Cir. 1996) (citing *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988)). Even the breach of a contract with a fixed-term case does not implicate procedural or substantive due process, especially where the plaintiff is able to bring a state-law action. See, *e.g.*, *Ramsey v. Board of Educ. of Whittley County, Kentucky*, 844 F.2d 1268, 1273-74 (6th Cir. 1988); *Sharp v. Lindsey*, 285 F.3d 479, 489 (6th Cir. 2002); *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). Because Vandalia was free to rescind the offer for any reason, and likely even terminate Oliver without cause once hired, Oliver had no constitutionally recognized property right in employment with Vandalia with which Defendants could have interfered.

The absence of a protected right is even more difficult for Oliver to overcome in her claimed violation of substantive due process. A substantive due process claim requires deprivation of a fundamental interest that is protected under substantive due process jurisprudence. As the Sixth Circuit stated in *Charles v. Baesler,* 910 F.2d 1349 (6th Cir. 1990):

> Most, if not all state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract.... State created rights such as [a] contractual right to promotion do not rise to the level of "fundamental" interests protected by substantive due process.

*Charles*, 910 F.2d at 1353; see also, *Sutton v. Cleveland Bd. of Educ.,* 958 F.2d 1339, 1351 (6th Cir.1992).

Even if there were a property interest in a conditional offer of employment, substantive due process is not implicated because a plaintiff wishing to plead a 42 U.S.C. § 1983 action has the burden of proving that state remedies are inadequate to redress the alleged wrong. *Sproul v. City of Wooster*, 840 F.2d 1267, 1270 (6th Cir. 1988), citing *Vicory v. Walton,* 721 F.2d 1062 (6th Cir.1983). If satisfactory state procedures are provided, then no constitutional deprivation of procedural due process has occurred despite the injury. *Jefferson v. Jefferson County Public School System*, 360 F.3d 583, 587-88 (6th Cir. 2004) (citing *Hudson*, 468 U.S. at 533, 104 S. Ct. 3194; and *Vicory*, 721 F.2d at 1065-66; see also *Parratt v. Taylor*, 451 U.S. 527, 101 S. Ct. 1908 (1981), (overruled on other grounds, *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662 (1986)); *Mansfield Apt. Owners Ass'n v. City of Mansfield*, 988 F.2d 1469, 1475 (6th Cir. 1993). Thus, a plaintiff must prove the inadequacy of state remedies as an element of her constitutional tort. *Jefferson v. Jefferson County Public School System*, 360 F.3d at 588 (citing *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988). Oliver cannot meet this burden, as her complaint states state-law remedies for federal claims she states.

As for the alleged violation of a property right in the settlement agreement, Oliver has not described what this might entail, and the Court cannot find any provision that could conceivably have been breached. The requirements on the part of Springboro were to pay Oliver for working through May 11, 2002, to pay out any accrued vacation time, to have COBRA rights continue at her expense through May 31, 2002, and not to contest Oliver's application for unemployment compensation. The contract contains a stipulation that:

>this document advised the entire agreement of the parties regarding its subject matter, merging and superceding any and all prior or contemporaneous agreements or understandings which either party wishes to preserve. The terms of this agreement may not be modified except by a subsequent writing signed by both parties.

Doc. 27, Ex. 1, at 2. The absence of a contract term that Defendants could have violated forecloses Oliver's § 1983 claim based upon the separation agreement. The Court will therefore enter summary judgment for Defendants on Oliver's federal claims.

### IV. Conclusion

This Court's finding that Oliver has no viable claims under federal law deprives this Court of the foundation for its subject matter jurisdiction. Although several of the state law counts over which the Court had jurisdiction pursuant to 28 U.S.C. § 1367 may have been properly asserted, a court may decline such supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The Court declines to exercise its supplemental jurisdiction over this matter. Oliver's state law claims are **REMANDED** to the Court of Common Pleas for Montgomery County, Ohio.

Accordingly, Motion of Defendants City of Springboro, Christine Thompson and Robyn Brown for Summary Judgment, Doc. 19, is **GRANTED**. The instant case is **TERMINATED** from the docket of the United States District Court for the Southern District of Ohio, Western Division.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, May 17, 2005.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE